UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| FRIAS HOLDING COMPANY, et al., | ) | Case No.: 2:11-cv-00160-GMN-LRL |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| GREENBERG TRAURIG, LLP, et. al, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I.  INTRODUCTION

Before the Court is Defendants Greenberg Traurig, LLP; Greenberg Traurig, P.A.; and Scott D. Bertzyk's Motion to Dismiss Plaintiffs' Complaint (EFC No. 9).  Plaintiffs Mark A. James and Frias Holding Company ("FHC") filed a Response in Opposition to Defendants' Motion (EFC No. 17), to which Defendants filed a Reply (EFC No. 22).

## II.  FACTS AND BACKGROUND

Plaintiffs' Complaint involves allegations that Defendants violated Nevada Rules of Professional Conduct. Plaintiffs allege 1) Legal Malpractice, 2) Breach of Fiduciary Duty, 3) Professional Negligence, 4) Breach of Contract, 5) Contractual Breach of the Implied Covenant of Good Faith and Fair Dealing, 6) Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing, 7) Declaratory Relief, 8) Deceptive trade Practice and 9) Injunctive Relief.

<u>Alexis Park Transaction and Litigation</u>

Defendants Greenberg Traurig (a law firm) and Bertzyk (one of the firm's attorneys) previously represented Plaintiffs, James (also an attorney) and FHC.  However, prior to representing Plaintiffs, the Defendants represented L.A. Pacific Center, Inc. ("LAP") in

litigation arising from a commercial real estate transaction in Las Vegas, Nevada (the "Alexis Park Transaction"). (Response 6:11-12, EFC No. 17.)  In that litigation, LAP was the buyer and James provided legal representation to the sellers, Hotels Nevada, LLC and Inns Nevada, LLC (together "Hotels & Inns"). (*Id.* at 6:1.)

On or about March 24, 2004, Hotels & Inns entered into an agreement with LAP to sell the Alexis Park property. (Complaint ¶ 14, ECF No. 1-1.)  Hotels & Inns and LAP subsequently disagreed on the payment date for LAP's additional consideration payment established in the transaction documents.  Hotels & Inns thereafter filed a complaint on May 4, 2005 in California state court (the "California Litigation") seeking to rescind the Alexis Park Transaction alleging fraud.  Hotels & Inns also filed suit in Nevada state court (the "Nevada Litigation") in January 6, 2006 on related claims. (Compl. at ¶¶ 16-17.)

James was an attorney with the law firm of Bullivant Houser Bailey, P.C. ("BHB") when he represented Hotels & Inns in both the California Litigation and the Nevada Litigation. (Compl. at ¶¶ 20-21.)  On or about May 1, 2006, LAP retained Defendant Greenberg Traurig, which then assigned Defendant Bertzyk to the California Litigation and the Nevada Litigation. (Compl. at ¶¶ 22-24.)

It is important to note that James was no longer involved in either of the two litigations after December 2006. (Compl. at ¶ 36). The California Litigation proceeded to arbitration in June 2008 (the "Arbitration"), with hearings before a 3-member panel. (Compl. at ¶¶ 34-35.) The Nevada Supreme Court stayed the Nevada Litigation on October 22, 2008.

During the Arbitration, LAP advanced the theory that Hotels & Inns and their counsel conspired to take back the Alexis Park property because the value had tripled since the transaction.  They alleged that Hotels & Inns feigned LAP's agreement to an outside payment date of twelve months. (Compl. at ¶¶ 73(a)-(c).)  Bertzyk, as lead counsel, specifically "accused James of single-handedly fabricating" this disingenuous story. (Compl. at ¶ 37.) Bertzyk

additionally accused James of committing fraud and also of manipulating evidence to support the sellers' version of the facts. (Compl. at ¶¶ 36, 38-39, 54-55). FHC and James assert that Bertzyk took every opportunity to disparage James' character and to direct malicious, personal attacks against him. (Compl. at ¶¶ 36-40.)

The 3-member arbitration panel found in favor of LAP and awarded damages against Hotels & Inns in excess of $140 million in its final award issued on October 27, 2009. The California Litigation court confirmed the award on February 25, 2010, which then proceeded to appeal. (Compl. at ¶ 52, 57.)

<u>Plaintiffs Become Clients of Greenberg Traurig</u>

Preceding the Arbitration, James had left the practice of law to become President and CEO of Frias Holding Company ("FHC"). Plaintiff FHC is a taxi and limousine service company in Clark County. (Compl. at ¶ 27.) James transitioned out of active involvement in the Alexis Park litigation by February 2007. (Compl. at ¶ 26.)

In or around September 2008, James, in his capacity as President and CEO, retained attorney Mark Tratos ("Tratos") of Greenberg Traurig to perform various intellectual property services for FHC. (Compl. at ¶¶ 31-33.) On or about July 14, 2009, James separately engaged attorney Michael Bonner ("Bonner") of Greenberg Traurig to represent him personally in applying for a Nevada gaming license. (Compl. at ¶ 44.) Both FHC and James executed corresponding engagement letters with Greenberg Traurig. (Compl. at ¶¶ 45-46.)

For purposes of the gaming application, James disclosed all of his personal information to Greenberg Traurig, including "an exhaustive description of his assets and net worth." (Compl. at ¶ 47.) Greenberg Traurig additionally itemized all previous lawsuits in which James participated, including the Alexis Park litigation. Although James realized that Greenberg Traurig represented LAP in the litigation, the firm did not warn James about any potential conflicts of interest with LAP or about Bertzyk's statements during the Arbitration. (Compl. at

¶ 48.) Ultimately, James did not need the gaming license so Greenberg Traurig never actually submitted James' application when however, Greenberg Traurig kept the file open at his request. (Compl. at ¶ 51.)

<u>Subsequent Actions Following the Alexis Park Litigation</u>

In or around November 2009, Hotels & Inns filed for bankruptcy protection in Nevada. As a result, LAP could not immediately collect on its judgment. Greenberg Traurig also could not collect on its receivable of nearly $8 million in legal fees. FHC and James assert that Bertzyk then began looking for alternative ways to obtain payment for LAP and Greenberg Traurig and James became Bertzyk's primary target. (Compl. at ¶ 58.)

Before the final Arbitration award, Bertzyk suggested to Stockton, one of Hotels & Inns' attorneys, that Hotels & Inns should explore filing legal malpractice suits against their former attorneys. Bertzyk sent Stockton an e-mail stating: "No way we let James get out cheap or easy." (Compl. at ¶ 61.) LAP would receive proceeds from any such suits. (Compl. at ¶ 59.) Allegedly, Bertzyk then received approval from the chairman of Greenberg Traurig's litigation department to institute litigation against James for his involvement in the Alexis Park Transaction. (Compl. at ¶ 64.)

Following the final Arbitration award, LAP filed a lawsuit against BHB (the "*LAP v. BHB* Litigation"), alleging misconduct in the Nevada Litigation, the California Litigation and the Arbitration. (Compl. at ¶¶ 65-68.) Terry Coffing of the law firm Marquis & Aurbach represented LAP in the suit. Coffing had also worked alongside Bertzyk in the Nevada Litigation. James and FHC thereupon allege that Bertzyk assisted in preparing the complaint and in pursuing the litigation against them. (Compl. at ¶ 66.) Coffing sent a draft of the first amended complaint to BHB, wherein James' name appeared crossed-out in the caption and other places. (Compl. at ¶ 69.) Ultimately, the filed complaint did not name James as a defendant. (Compl. at ¶ 70.)

Bertzyk provided a declaration in the *LAP v. BHB* Litigation. His declaration discussed the Alexis Park litigation and the aforementioned theories of fraud advanced in the Arbitration. (Compl. at ¶¶ 71-73(a).) The same allegations in relation to James appeared throughout. (Compl. at ¶¶ 73, 73(b), 73(f); Bertzyk Decl. Ex. 3, Feb. 3, 2011, EFC No. 10.) James and FHC terminated their respective relations with Greenberg Traurig on August 13, 2010. (Compl. at ¶ 91.)

Present Lawsuit

As a result of the aforementioned, FHC and James brought this suit against Greenberg Traurig and Bertzyk in state court alleging that Greenberg Traurig and Bertzyk breached multiple professional and fiduciary duties owed to FHC and James through their concurrent representation of LAP. (Compl. at ¶¶ 12-13.) Greenberg Traurig and Bertzyk removed the action to this Court. (Notice of Removal. at ¶¶ 1-2.)

Greenberg Traurig and Bertzyk now move to dismiss James and FHC's Complaint with prejudice, arguing: (1) that Nevada's litigation privilege effectively bars FHC and James' claims as a matter of law; (2) that FHC and James failed to plead any legally cognizable damages; (3) that FHC and James previously waived any purported conflict of interest; (4) that the declaratory relief claim is duplicative and unnecessary; and (5) that the request for injunctive relief is overbroad, inappropriate, and unwarranted. (Motion to Dismiss, EFC No. 9.)

FHC and James respond that Greenberg Traurig and Bertzyk purposefully targeted their own client, that the Complaint sufficiently shows non-speculative damages, and that the alleged conflict was not waived by FHC and James. (Response 6:11-12, ECF No. 17.)

**III.   DISCUSSION**

    **A.   Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. *See N. Star Int'l v. Ariz. Corp.*

*Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  A strong presumption exists against dismissal for failure to state a claim. *See Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir.1997). However, a formulaic recitation of the elements of a cause of action will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The complaint must "state a claim of relief that is plausible on its face." *Id.* at 570.  A plausible claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  In considering a motion to dismiss, the court accepts all well-pleaded factual allegations as true, construing them in the light most favorable to the non-moving party. *See Daniels-Hall v. Natl. Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  Nonetheless, a court does not assume the truth of allegations that are merely conclusory or unwarranted inferences. *See Clegg v. Cult Awareness Network,* 18 F.3d 752, 754-55 (9th Cir. 1994).

Generally, the court may not consider any material beyond the pleadings in analyzing a motion to dismiss. *See Hal Roach Studios, Inc. v. Richard Feiner& Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted).  However, the court may also consider any documents not explicitly incorporated within the complaint if the document is mentioned in the complaint, is central to the plaintiff's claim, and is not questioned by the parties to be unauthentic. *See Daniels-Hall*, 629 F.3d at 998. Dismissal pursuant to Rule 12(b)(6) is appropriate when the complaint does not give the defendant fair notice of a legally cognizable claim. *See Twombly,* 550 U.S. at 555.  However, a federal court must first make a threshold determination of whether a party has established the requisite standing to sue. *See Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990).

    **B.**    **Analysis**

        **1.**    **Standing**

"[T]he irreducible constitutional minimum of standing" requires a plaintiff to allege

personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). *See Allen v. Wright*, 468 U.S. 737 (1984); *Schmier v. U.S. Ct. of Appeals for Ninth Cir.*, 279 F.3d 817, 821 (9th Cir. 2002). First, a plaintiff must clearly demonstrate that he has suffered an injury-in-fact that "is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560-61 (internal quotes and citations omitted); *Whitmore*, 495 U.S. at 155. This requirement ensures that a court is adjudicating claims arising from actual injuries since "[t]he federal courts do not have the constitutional authority to adjudicate . . . metaphysical injuries." *Schmier*, 279 F.3d at 822.

If no damages exist, no claims can exist. *See Petersen v. Bruen*, 792 P.2d 18, 20 (Nev. 1990) ("[A] cause of action accrues when the wrong occurs and a party sustains injuries . . ."); *Boulder City v. Miles*, 449 P.2d 1003, 1005 (Nev. 1969) ("[N]o one has a claim against another without having incurred damages."). The alleged harm cannot be hypothetical, speculative, or describe other possible future injuries. *Schmier*, 279 F.3d at 821. *See Lujan,* 504 U.S. at 560.

FHC and James' Complaint relies heavily on the Nevada Rules of Professional Conduct, claiming that Greenberg Traurig and Bertzyk's alleged violations of the rules "were the direct and proximate cause of damages sustained by FHC and James." (Compl.¶¶ 92-94, 104.) Notwithstanding Plaintiffs' assertions, the Nevada Supreme Court in *Mainor v. Nault*, 101 P.3d 308, 321 (Nev. 2004) held that a violation of the rules of professional conduct does not create a cause of action. Thus, James and FHC must plead other facts independent of the alleged violation of the rules of professional conduct to adequately allege that Greenberg Traurig and Bertzyk proximately caused FHC and James to suffer damages. *See Semenza v. Nevada Med. Liab. Ins. Co.*, 765 P.2d 184, 185 (Nev. 1988).

Greenberg Traurig and Bertzyk argue that FHC and James failed to suffer or allege a legally recognized injury. "[W]here damage has not been sustained or where it is too early to

know whether damage has been sustained, a legal malpractice action is premature and should be dismissed." *Id.* at 186.  It is true that the Complaint does not allege any mishandling by Greenberg Traurig of FHC's intellectual property matter or of James' gaming application.  Nor does the Complaint allege any specific injuries to James or FHC as a result of the foregoing representations.  FHC and James' assertions rest entirely on harm caused through Greenberg Traurig and Bertzyk's representation of LAP.

        a.       <u>Harm to FHC</u>

Rather than alleging harm caused to FHC's intellectual property matters, FHC alleges that Greenberg Traurig and Bertzyk "potentially jeopardized FHC's otherwise unquestioned suitability . . . to do business in the State of Nevada by attacking its President and CEO." (Compl.¶ 81, 101.)  Greenberg Traurig and Bertzyk contend that since FHC and James are distinct entities, their claims must be analyzed separately. *See Waid v. Eighth Jud. Dist. Ct. ex rel. County of Clark*, 119 P.3d 1219, 1223 (Nev. 2005) ("Generally, a lawyer representing a corporate entity represents only the entity, not its officers, directors, or shareholders. . . ."). However, *Waid* concerns the issue of extending a corporation's attorney-client relationship to its officers, not the issue of whether injuries to an officer's business image also impute the corporation. James' role as FHC's President, CEO, and sole minority owner establishes him as the public face of the company.  As such, he conducts business on FHC's behalf.  James interacted with Greenberg Traurig regularly as the "client representative of FHC." (Compl. at ¶¶ 33, 41, 43.)  Taking FHC and James' factual allegations as true, as the Court must in addressing a motion to dismiss, the Court presumes that any attacks directed towards James also have the potential to cause harm to FHC.

Since governmental agencies regulate FHC, the company must maintain certain standards to preserve their licenses eligibility.  While a client of Greenberg Traurig, Bertzyk attacked the honesty and integrity of James.  Plaintiffs argue that as a result of Defendants'

conduct, the transportation authorities may now "possibl[y] … reconsider whether FHC should be allowed to continue to do business in the State of Nevada while being owned in part by and employing James as its President and CEO." (Response at 22:2-5.)  However, FHC has failed to allege any facts showing that the company itself has suffered a direct or immediate injury as a result of Bertzyk's statements.  The allegations that FHC <u>may</u> "some day" lose its licensing do not establish "actual or imminent injury" for standing.  *See Schmier*, 279 F.3d at 821-22 (finding insufficient injury to confer standing where the plaintiff may "some day" suffer harm); s*ee also Lujan*, 504 U.S. at 560-61 (stating that an injury must be "actual or imminent, not conjectural or hypothetical.").  Stating that Greenberg Traurig and Bertzyk put FHC "in harm's way" does not present even the slightest indication that FHC suffered or will suffer a concrete injury soon. (Response 22:6.)  FHC fails to allege any immediate, concrete repercussions from the transportation authorities.  *See Schmier*, 279 F.3d at 824 (finding dismissal without leave to amend proper where the plaintiff had not yet exposed himself to possible sanctions).

        Dismissal without leave to amend is improper unless it is clear that amendment would be futile and the plaintiff can prove no set of facts that would constitute a valid claim so as to satisfy the standing requirement. *See DeSoto v. Yellow Freight Sys.*, *Inc.*, 957 F.2d 655, 658 (9th Cir.1992); *Schmier*, 279 F.3d at 824.  In this case, FHC can possibly amend its Complaint to allege injury-in-fact.  FHC's claims are dismissed with leave to amend.

        b.)    <u>Harm to James</u>

        Greenberg Traurig and Bertzyk argue that Plaintiffs similarly fail to allege facts demonstrating how James suffered harm.  James explains in his response to the motion that his "reputation has been unquestionably tarnished by Bertzyk." (Response at 22:7.)  However, although the Complaint sufficiently alleges that Bertzyk made "false and defamatory" statements against James, it does not contain any allegations of harm to James' reputation.  In a motion to dismiss, the court may not consider any material beyond the pleadings. *See Hal*

*Roach Studios*, 896 F.2d at 1555. Therefore, any new factual arguments provided by James in his Response regarding his tarnished reputation which are not alleged in his Complaint cannot defeat dismissal.

Insofar as James claims that he <u>may</u> not receive a gaming license in the future, this claim likewise fails to allege "actual or imminent injury." James' assertion that Bertzyk put James' character in doubt, thereby risking his record of integrity with the gaming authorities, alleges speculative future harm and is insufficient to establish standing.

Furthermore, James fails to demonstrate injury-in-fact from Bertzyk's conduct encouraging others to make James a target of litigation. Although Bertzyk may very well have misused James' financial information while soliciting litigation against him, that litigation never arose. James has yet to be named in a suit by Greenberg Traurig or anyone else. Therefore, at this point, any harm resulting from potential litigation is speculative and does not confer standing.

For the reasons discussed *supra,* the Court dismisses James' claims with leave to amend. If James has applied for and been denied a gaming license or suffered any other tangible harm, those facts must be sufficiently pled.

### 2. Legally Cognizable Damages

Additionally, FHC and James contend that they adequately pled non-speculative damages in their prayer for 1) disgorgement of the fees paid to Greenberg Traurig, 2) an award of attorneys' fees and 3) punitive damages. However, this is irrelevant to the Court's determination of standing. All three requests merely plead <u>relief</u> from the Court, not <u>harm</u> caused by Greenberg Traurig and Bertzyk. *See Slovensky v. Friedman*, 49 Cal. Rptr. 3d 60, 73 (Cal. App. 3d Dist. 2006) ("Disgorgement of fees may be an appropriate remedy for an attorney's breach of fiduciary duty."). *See also Settelmeyer & Sons, Inc. v. Smith & Harmer, Ltd.*, 197 P.3d 1051, 1059 (Nev. 2008) (finding no conflict of interest barring the lawyer's

recovery of attorney fees even though the services were rendered in violation of the Rules of Professional Conduct).

Plaintiffs also assert that Greenberg Traurig and Bertzyk acknowledged James' and FHC's pleadings for damages by removing the action to federal court on the basis of diversity jurisdiction and thereby accepted the amount in controversy. Defendants concede in their Notice of Removal that Plaintiffs paid $118,763.75 in legal fees and an additional $4,370.14 in costs to the firm. (ECF No. 13). Nevertheless, Plaintiffs' argument is without merit. In establishing the amount at issue to establish federal jurisdiction, the defendant *need not concede liability* for the entire amount. *Lewis v. Verizon Communications, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) (emphasis in original) ("A defendant's allegation regarding the amount in controversy does not preclude a subsequent attack on the merits of the plaintiff's damages claim.").

### 3. Declaratory and Injunctive Relief

FHC and James further seek declaratory and injunctive relief alleging an impermissible conflict of interest created by Greenberg Traurig and Bertzyk's concurrent representation of LAP. Although Greenberg Traurig and Bertzyk maintain that such claims are redundant, the Court need not address the issue at this time. A claim for equitable relief is a potential remedy that may be afforded to a party after claims have been sufficiently established and proven. A claim for equitable relief is not a separate cause of action. *See e.g.*, *In re Wal-Mart and Hour Employment Practices Litig.*, 490 F.Supp. 2d 1091, 1130 (D.Nev.2007). Just as with substantive claims, a plaintiff seeking equitable relief must establish standing to sue. *See Lujan*, 504 U.S. at 560; *see also San Diego County Gun Rights Committee v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) (holding that plaintiff requesting injunctive relief must show threatened injury is "actual or imminent" and "concrete and particularized"); *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1044 (9th Cir. 1999) (holding that ripeness requirement for declaratory

relief claims "serves the same function . . . as the imminent-harm requirement" for injunctive relief claims). Accordingly, FHC's and James' failure to plead proper claims for relief is similarly fatal to their request for declaratory and injunctive relief. The Court dismisses FHC's and James' declaratory and injunctive relief claims, without prejudice.

## IV.   CONCLUSION

**IT IS HEREBY ORDERED** that Defendants Greenberg Traurig, LLP; Greenberg Traurig, P.A.; and Scott D. Bertzyk's Motion to Dismiss Plaintiffs' Complaint (EFC No. 9) is **GRANTED to the extent it conforms with this Order**.

The **Complaint is DISMISSED without prejudice**. Plaintiffs Mark A. James and Frias Holding Company are **ORDERED to Amend the Complaint not later than October 12, 2011,** if they can allege facts demonstrating an injury permitting standing.

DATED this 26th day of September, 2011.

_____
Gloria M. Navarro
United States District Judge