# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

FRIAS HOLDING COMPANY, a corporation; and MARK A. JAMES, an individual,

        Plaintiffs,

  vs.

GREENBERG TRAURIG, LLP, a limited liability partnership, GREENBERG TRAURIG, P.A., a professional association, SCOTT D. BERTZYK, an individual, DOES 1 through X; and ROE ENTITIES XI through XX, inclusive,

        Defendants.

Case No.: 2:11-cv-160-GMN-VCF

**ORDER**

      Pending before the Court is the Motion to Dismiss the First Amended Complaint (ECF No. 30) filed by Defendants Scott Bertzyk, Greenberg Traurig, P.A., Greenberg Traurig, LLP (collectively, "Defendants" or "Greenberg Traurig").  Plaintiffs Frias Holding Company ("FHC") and Mark A. James ("Mr. James") (collectively, "Plaintiffs") filed a Response (ECF No. 34) and Defendants filed a Reply (ECF No. 35).  For the reasons discussed below, the Court denies Defendants' Motion to Dismiss Plaintiffs' claims.  However, as there is no controlling Nevada Supreme Court authority regarding the existence of a legal malpractice exception to the litigation privilege, the Court certifies the relevant question to the Nevada Supreme Court.  Thus, the Court denies Defendants' Motion to Dismiss Plaintiffs' claims based on Nevada's litigation privilege, without prejudice. The motion may be renewed dependent upon the Nevada Supreme Court's resolution of the certified question.

## I. BACKGROUND

### A. Procedural History

Before the case was removed to this Court, Plaintiff initially filed suit in state court on November 29, 2011. (Compl., Ex. A to Pet. Removal, ECF No. 1-2.) Plaintiffs' original complaint alleges nine causes of action arising out of Defendant Greenberg Traurig's prior legal representation of FHC and Mr. James: (1) legal malpractice; (2) breach of fiduciary duty; (3) professional negligence; (4) breach of contract; (5) contractual breach of the implied covenant of good faith and fair dealing; (6) tortious breach of the implied covenant of good faith and fair dealing; (7) declaratory relief; (8) deceptive trade practices; and (9) injunctive relief. (*Id.* at ¶¶ 96-168.)

Subsequently, Defendants filed a Motion to Dismiss Plaintiffs' complaint (Defs.' Mot. Dismiss, ECF No. 9), which the Court granted on September 26, 2011, dismissing the complaint without prejudice, with leave to amend. (Order Grant'g Defs.' Mot Dismiss, ECF No. 26). In response, Plaintiffs filed the First Amended Complaint ("FAC") alleging seven causes of action: (1) legal malpractice; (2) breach of fiduciary duty; (3) professional negligence; (4) breach of contract; (5) contractual breach of the implied covenant of good faith and fair dealing; (6) tortious breach of the implied covenant of good faith and fair dealing; and (7) deceptive trade practices. (Am. Compl. ¶¶ 109-169, ECF No. 27.)

Plaintiffs' FAC alleges that Defendants attacked Mr. James' integrity in a prior litigation. Plaintiffs further allege that Defendants agreed to provide legal advice to Plaintiffs without disclosing this conflict of interest and, thus, Defendants violated their duty of loyalty. Finally, Plaintiffs allege that Defendants' conduct caused injury to Plaintiffs' business opportunities.

### B. The LAP Litigation

The alleged conflict of interest arises due to Defendants' representation of L.A. Pacific ("LAP") in an action filed by Hotels Nevada, LLC and Inns Nevada, LLC (collectively, "Hotels

& Inns") that began on May 4, 2005 ("the LAP Litigation"). (Am. Compl. ¶ 17, ECF No. 27.) In that litigation, Mr. James, an attorney at Bullivant Houser Bailey, represented Hotels & Inns and Mr. Bertzyk, an attorney at Greenberg Traurig, represented LAP. (*Id.* at ¶¶ 51, 23.)

During the course of this litigation, on December 16, 2006, Mr. James left his position with Bullivant Houser Bailey and accepted a position as President and CEO of Frias Holding Company ("FHC"), a taxi and limousine service provider. (*Id.* at ¶ 27.) Specifically, FHC operates five taxi companies and two limousine companies that provide taxi and limousine services throughout Clark County, Nevada. (*Id.* at ¶ 28.) Although Mr. James began as an employee and the public face of the company, he became the sole minority owner in May 2009. (*Id.* at ¶ 31.)

Due to Mr. James's leaving Bullivant Houser Bailey and assuming his position at FHC, by February 2007, Mr. James had transitioned out of active involvement in the LAP Litigation. (*Id.*) Throughout the course of the LAP Litigation, Plaintiffs claim that counsel for LAP, including Mr. Bertzyk of Greenberg Traurig, asserted "countless, completely unfounded accusations . . . against Hotels & Inns and their counsel (including Mr. James) of committing fraud, suborning perjury, and concealing or manipulating evidence . . .."[1] (*Id.* at ¶ 37.) Plaintiffs further allege that Mr. Bertzyk was the "principal proponent" of these charges and "[took] advantage of every opportunity to directly charge Mr. James with wrongdoing and level malicious personal attacks against him." (*Id.*) Additionally, because Mr. James had already completely transitioned out of his role in the litigation and into his role at FHC, he was unaware of these attacks and not present to defend himself. (*Id.*)

Ultimately, the arbitration panel awarded damages against Mr. James' former client, Hotels & Inns. (*Id.* at ¶ 53.) In LAP's subsequent motion seeking attorneys' fees, Mr. Bertzyk made specific reference and "states definitively that Hotels & Inns, through their counsel,

---

[1] The FAC provides specific statements that Mr. Bertzyk made during the course of the arbitration asserting that, among other things, Mr. James had tampered with evidence. (Am. Compl. ¶ 39, ECF No. 27.)

(i) misrepresented the truth, (ii) withheld relevant evidence, (iii) planted false evidence, (iv) altered or destroyed evidence, and (v) misled or subverted justice." (*Id.* at ¶ 55.) Even though this motion was granted, LAP could not collect from Hotels & Inns due to the latter filing for bankruptcy protection. (*Id.* at ¶ 59.) In response, Mr. Bertzyk suggested that Hotels & Inns "engage new counsel to investigate and possibly bring legal malpractice claims against their former attorneys—including . . . Mr. James . . .." (*Id.* at ¶ 60.) Mr. Bertzyk also suggested that LAP would settle its claims against Hotels & Inns in exchange for "the bulk of the net proceeds that Hotels & Inns recovered from any such malpractice lawsuit(s)." (*Id.*)

### C.   GT's Representation of Mark James and FHC

In mid-2008, in his capacity as President and CEO, Mr. James sought legal representation from the attorneys at Greenberg Traurig. (*Id.* at ¶ 32.) At first, Mr. James primarily sought intellectual property services. (*Id.* at ¶ 33.) Later, in July 2009, Mr. James personally became a client of Greenberg Traurig for the purposes of obtaining a gaming license in Nevada. (*Id.* at ¶ 45.) This representation required Mr. James to disclose great amounts of "highly personal and sensitive" personal and financial information about himself. (*Id* at ¶ 48.)

### D.   The General Waiver

In connection with Greenberg Traurig's representation of Mr. James and FHC, Mr. James signed a Retention Agreement that included a "broad conflicts waiver."[2] (Defs.' Mot Dismiss 20:4, ECF No. 30). Specifically, the Retention Agreement notifies Plaintiffs that Greenberg

---

[2] The "Consent to Representation of Adverse Parties" section of the Retention Agreement provides, in part:

> By executing this letter, you acknowledge that we have disclosed to you the fact that we represent, and will represent in the future, clients who directly, or through an affiliate, may be adverse parties to you in current or future transactions in which we are representing you. In addition, you acknowledge that you have no objection to our representing such clients, whether in negotiations or litigation, in connection with such matters related to your personal or business activities. ***This consent does not apply to any matter in which you have a direct interest or conflict.*** Further, this consent does not permit us to use any confidential information obtained during the course of our representation of you in any matter.

(Bonner Aff. at 9, Ex. 1, ECF No. 32) (emphasis added).

1  Traurig represents many clients in Southern Nevada and acknowledges that the firm
2  "represent[s], and will represent in the future, clients who directly, or through an affiliate, may
3  be adverse parties to [the client] in current or future transactions in which [the firm is]
4  representing [the client]." (Bonner Aff. at 9, Ex. 1, ECF No. 32.)  The Retention Agreement
5  further acknowledges that Plaintiffs' consent to these conflicts "does not apply to any matter in
6  which [Plaintiffs] have a direct interest or conflict." (*Id.*)  However, both parties acknowledge
7  that Greenberg Traurig never specifically discussed the allegations that Mr. Bertzyk had
8  previously asserted against Mr. James in the LAP Litigation. (*See id.* at 19:26-22:17; Pls.' Resp.
9  29:3-13, ECF No. 34.)  In fact, Plaintiffs allege that Mr. James had no knowledge that Mr.
10 Bertzyk had attacked Mr. James' integrity and questioned his conduct during the LAP
11 Litigation. (Pls.' Resp. 29:5-8, ECF No. 34.)  Additionally, Mr. James was unaware that "Mr.
12 Bertzyk was actively soliciting litigation against him and assisting with litigation brought
13 against his former law firm." (*Id.* at 8-11.)

### E. The "A Cab" Transaction

15 As a taxi and limousine service provider, FHC has a "specific and limited percentage of
16 the total Las Vegas market share." (*Id.* at ¶ 93.)  In July 2009, Creighton J. Nady, owner of A
17 Cab, LLC ("A Cab") "initiated discussions with Mr. James regarding a potential sale of A Cab,
18 LLC to FHC." (*Id.* at ¶ 95.)  Plaintiffs allege that FHC was the ideal target for this potential sale
19 because Mr. James had recently been approved by the Nevada Taxicab Authority ("the
20 Authority") as "fit, willing and able to perform the services of a taxicab motor carrier." (*Id.* at ¶
21 96.)  Namely, Plaintiffs allege that Mr. Nady believed that a sale to FHC would "receive rather
22 quick regulatory approval." (*Id.* at ¶ 96.)  Unfortunately, Mr. Nady was subsequently informed
23 that any sale to FHC would require a "full investigation into the allegations being made against
24 Mr. James . . . before any recommendation could be made to the Authority concerning the
25 approval of a sale to FHC." (*Id.* at ¶ 100.)  Three months after this meeting, Mr. Nady terminated

the proposed sale of A Cab to FHC. (*Id.* at ¶ 102.)  Plaintiffs acknowledge that there were multiple sources of such allegations, but one of these sources was the allegations made by Mr. Bertzyk during the course of the LAP Litigation. (*Id.* at ¶ 106.)

## II. LEGAL STANDING

Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. *North Star Int'l. v. Arizona Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give a defendant fair notice of a legally cognizable claim and the grounds on which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, a court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

Courts, however, are not required to accept as true, allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is *plausible*, not just possible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555) (emphasis added).

## III. DISCUSSION

### A. STANDING

"[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  As such, to survive a motion to dismiss, plaintiffs bear the burden of alleging sufficient facts to show the existence of each of three elements. *Id.*

> First, the plaintiff must have suffered an 'injury in fact'-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . the[e] result [of] the independent action of some third party not before the court.' Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'

*Id.* at 560-61 (alteration in original) (citations and internal quotation marks omitted). When analyzing a motion to dismiss for lack of standing, courts must accept the allegations in the complaint as true and construe the complaint in favor of the complaining party. *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011). Indeed, at the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice," because on a motion to dismiss, courts "presume that general allegations embrace those specific facts that are necessary to support the claim." *Maya*, 658 F.3d at 1068 (citing *Lujan*, 504 U.S. at 561).

### 1. Plaintiffs suffered a concrete and actual injury.

The allegations in Plaintiffs' FAC are sufficient to plead the requisite concrete and actual injury. In fact, the Supreme Court has long recognized that "[p]alpable economic injuries [are] sufficient to lay the basis for standing." *Sierra Club v. Morton*, 405 U.S. 727, 733-34 (1972); *see also San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1130 (9th Cir. 1996) (noting that "[e]conomic injury is clearly a sufficient basis for standing").

In this case, Plaintiffs allege that A Cab, LLC ("A Cab") approached FHC to discuss the potential sale of A Cab to FHC. (Am. Compl. ¶ 103, ECF No. 27.) Plaintiffs' FAC later states that this potential sale was terminated by the seller, thus "caus[ing] damages in excess of $500,000.00 for the first year and increasing substantially on an annual basis thereafter." (*Id.*) Accordingly, as the potential buyer, FHC clearly sustained injury by losing these revenues. (*Id.*) Additionally, Mr. James personally sustained an injury because of his position as 48% owner of FHC. (*Id.*)

### 2. Plaintiffs have alleged the requisite causal link between the injuries and Defendants' conduct.

The allegations in Plaintiffs' FAC are also sufficient to plead the requisite causal link between the Defendants' alleged conduct and the alleged injury. Specifically, "[t]o survive a motion to dismiss for lack of constitutional standing, plaintiffs must establish a 'line of causation' between defendants' action and their alleged harm that is more than 'attenuated.'" *Maya*, 658 F.3d at 1070 (citing *Allen v. Wright*, 468 U.S. 737, 757 (1984)). In this case, Defendants appear to argue that Plaintiffs must plead sufficient facts to show that Defendants' alleged conduct is the proximate cause of Plaintiffs' alleged injuries. (*See* Mot. Dismiss 15:8-19, ECF No. 30 (arguing that the lack of an "allegation that Defendants' directly caused A Cab to reconsider the 'potential sale' to FHC" destroys the required causal link).) However, a chain of causation is acceptable, even if it has several "links," so long as those links are plausible, and "not hypothetical or tenuous." *Nat'l Audubon Soc., Inc. v. Davis*, 307 F.3d 835, 849 (9th Cir. 2002) (citing *Autolog Corp. v. Regan*, 731 F.2d 25, 31 (D.C. Cir. 1984) (holding that the "length of the chain of causation" is not dispositive, rather the "plausibility of the links that comprise the chain" govern the causation analysis)).

Here, Plaintiffs' FAC provides sufficient facts to demonstrate a plausible chain of causation in order to survive a motion to dismiss for lack of standing. The FAC alleges that A Cab specifically approached FHC "because [the owner of A Cab] knew that Mr. James had been recently approved by the [Nevada Taxicab] Authority to be 'fit, willing and able to perform the services of a taxicab motor carrier,'" and therefore believed that a sale to FHC would receive "rather quick regulatory approval." (Am. Compl. at ¶ 96.) However, the Administrator of the Nevada Taxicab Authority ("Authority") later informed the owner of A Cab that "any sale to FHC would take longer as the Authority would require a full investigation into the allegations being made against Mr. James . . . before any recommendation could be made to the Authority

concerning the approval of a sale to FHC." (*Id.* at ¶ 100.) After learning of this imminent delay, A Cab terminated the proposed sale because of "the extended time frame for any sale and the sale's dependence upon any investigation by the Authority into allegations being made against Mr. James." (*Id.* at ¶ 102.)

Plaintiffs specifically allege that the Authority's need to investigate was prompted by the statements that Mr. Bertzyk made during the course of the LAP Litigation. (Pls.' Resp. 18:17-19.) Plaintiffs further allege that it was this need to investigate and the corresponding delay that resulted in A Cab terminating the proposed sale. (*Id.* at 18:8-10.) Apparently, Mr. Bertzyk was not the only individual who made comments about Mr. James that could have lead the Authority to require a full investigation. (*See* Mot. Dismiss 14:11-14, ECF No. 30.) However, at this stage, Plaintiffs' assertions are sufficient to plead the necessary causal connection between the concrete and actual injury and the Defendants' conduct. It is plausible that Mr. Bertzyk's statements impugning Mr. James' integrity caused a delayed approval process. Because of that delay, the owner of A Cab withdrew the proposed sale, thus injuring the Plaintiffs.

### 3. Plaintiff's injury can be redressed by a favorable ruling.

Here, Plaintiffs specifically state, that the redressability element is not in dispute; Defendants do not argue otherwise. (Pls.' Resp. 16:15.) Even if the parties were disputing redressability, that element is clearly met here. Specifically, Plaintiffs assert that they were injured when the A Cab purchase fell through. (Am. Compl. ¶ 103, ECF No. 27.) If the Court were to rule in Plaintiffs' favor, the Court could award money damages to redress this injury. Thus, Plaintiffs have carried their burden by pleading facts that establish the redressability element.

### B. **WAIVER**

Neither party disputes that Defendants' concurrent representation of Plaintiffs and LAP resulted in a "concurrent conflict of interest" within the meaning of Nevada Rule of Professional

Conduct 1.7.[3]  The dispute centers on whether the conflict was waivable and, if so, whether Plaintiffs actually waived the conflict.

### 1. Plaintiffs' FAC contains sufficient facts to establish a plausible claim that Defendants' conflict of interest was not waivable.

Nevada Rule of Professional Conduct 1.7(b) provides that, even when a concurrent conflict of interest exists, a lawyer may represent the client if:

> (1) The lawyer **reasonably** believes that the lawyer will be able to provide competent and diligent representation to each affected client;
> (2) The representation is not prohibited by law;
> (3) The representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
> (4) Each affected client gives **informed** consent, confirmed in writing.

Nev. R. Prof'l Conduct 1.7(b) (emphasis added).  Only when each of these four elements is satisfied, can a lawyer properly accept a representation in the face of a concurrent conflict of interest.

In this case, Plaintiffs' FAC includes facts that, when taken as true, establish that Defendants could not "provide competent and diligent representation to each affected client." *See* Nev. R. Prof'l Conduct 1.7(b).  Specifically, Defendants' litigation strategy with respect to the LAP Litigation involved attacking Mr. James' integrity.  (Am. Compl. ¶¶ 38-40, ECF No. 27.)  Given this strategy, Plaintiffs allege that it was not reasonable for the Defendants to believe that they could provide competent and diligent representation to Mr. James and FHC, especially in matters that required Defendants to establish Mr. James' good character, *i.e.*, the procurement of a gaming license.  (*Id.* at ¶ 14.)  Thus, Plaintiffs' FAC adequately pleads that this concurrent conflict of interest was nonwaivable and, as such, Plaintiffs could not consent to the conflict.

---

[3] Plaintiffs expressly assert that there was a concurrent conflict of interest.  Defendants, on the other hand, fail to address this first step of a conflicts analysis.  In fact, Defendants appear to assume that there was a concurrent conflict of interest by solely addressing whether Plaintiffs gave informed consent, confirmed in writing to this conflict.

### 2. Even if this conflict was waivable, Plaintiffs' FAC contains sufficient facts to establish a plausible claim Plaintiffs did not waive the conflict.

Even assuming that Plaintiffs could waive this conflict, Plaintiffs' FAC includes sufficient facts to establish that the signed conflicts waiver was inadequate to actually waive this specific conflict. Nevada Rule of Professional Conduct provides that, before a conflict can be waived, the attorney must also establish that the affected client consented to the conflict. Nev. R. Prof'l Conduct 1.7(b)(4). Specifically, the client must give "*informed* consent, confirmed in writing." *Id.* (emphasis added). The Nevada Rules of Professional Conduct define "informed consent" as an "agreement by a person . . . after the lawyer has communicated adequate information and explanation about the material risks . . . and reasonably available alternatives . . . ." Nev. R. Prof'l Conduct 1.0(e).

Here, Plaintiffs allege that Defendants failed to specifically inform Plaintiffs of this conflict and, thus, Plaintiffs could not give informed consent to this conflict through a general conflicts waiver. (Pls.' Resp. 29:3-5, ECF No. 34.) However, Defendants argue that Mr. James was already aware of Mr. Bertzyk's litigation strategy because of Mr. James' previous involvement with the LAP Litigation. (Defs.' Mot. Dismiss 22:4-12, ECF No. 30.) Given this knowledge, Defendants argue that when Plaintiffs executed the general conflicts waiver, Plaintiffs did give informed consent as to this particular conflict. (*Id.*) However, Defendants fail to cite to binding or persuasive authority to support this proposition.[4] (*See id.* at 21:8-16.)

Even if Defendants had no duty to inform Plaintiffs of specific conflicts about which Plaintiffs obviously had knowledge, Plaintiffs FAC still survives Defendants' Motion to Dismiss

---

[4] Defendants cite a New York case that interprets a similar rule from the New York Code of Professional Responsibility to support its argument that a waiver need not disclose a specific conflict when "the aggrieved party [is] 'obviously . . . aware'" of the conflict and "therefore 'ha[s] all the information it need[s] to make an informed decision . . . .'" (Defs.' Mot. to Dismiss 21:11-14, ECF No. 30 (quoting *St. Barnabas Hosp. v. N.Y.C. Health & Hosp. Corp.*, 7 A.D.3d 83, 94 (N.Y. App. Div. 2004))).

because Plaintiffs allege that neither Mr. James, nor FHC actually were aware of the conflict when the waiver was signed. (Am. Compl. ¶ 44, ECF No. 27.) Accordingly, Plaintiffs' FAC contains sufficient facts that, when taken as true, form a plausible claim that Defendants failed to obtain Plaintiffs' informed consent to this conflict.

### C. LITIGATION PRIVILEGE: CERTIFICATION OF QUESTION TO THE NEVADA SUPREME COURT

Defendants argue that this case is barred by the litigation privilege. Because most, if not all, of Plaintiffs' claims rely on statements made during the course of the LAP Litigation, a dispositive question exists whether those statements are privileged. If those statements are privileged, one or more of Plaintiffs' claims may be dismissed with prejudice. Nevada follows "the long-standing common law rule that communications uttered or published in the course of judicial proceedings are absolutely privileged." Fink v. Oshins, 49 P.3d 640, 643 (Nev. 2002) (citation omitted). However, the parties disagree as to whether Nevada law recognizes an exception to the litigation privilege for legal malpractice actions and there is no controlling precedent. Such an exception would greatly affect the legal profession in Nevada. Moreover, Nevada Supreme Court Rule 39 vests "inherent and exclusive" authority in the Nevada Supreme Court "to admit to practice and to discipline" attorneys. Nev. Sup. Ct. R. 39. Given these important considerations, the Court hereby certifies this question of law to the Nevada Supreme Court. *See* Nev. R. App. P. 5.

Pursuant to Rule 5 of the Nevada Rules of Appellate Procedure ("Rule 5"), a United States District Court may certify a question of law to the Nevada Supreme Court "upon the court's own motion." Nev. R. App. P. 5(a)-(b). Under Rule 5, the Nevada Supreme Court has the power to answer such a question that "may be determinative of the cause then pending in the certifying court and . . . it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of this state." Nev. R. App. P. 5(a). In this case, the Court is

sitting in diversity jurisdiction; thus Nevada substantive law controls. Moreover, the parties fail to cite and the Court has not found any controlling decisions from the Nevada Supreme Court that either accepts or rejects a legal malpractice exception to the litigation privilege. Accordingly, under Rule 5, answering this certified question is within the power of the Nevada Supreme Court.

Rule 5 also provides that a certification order must specifically address each of six requirements:

> (1) The questions of law to be answered;
> (2) A statement of all facts relevant to the questions certified;
> (3) The nature of the controversy in which the questions arose;
> (4) A designation of the party or parties who will be the appellant(s) and the party or parties who will be the respondent(s) in the Supreme Court;
> (5) The names and addresses of counsel for the appellant and respondent; and
> (6) Any other matters that the certifying court deems relevant to a determination of the questions certified.

Nev. R. App. P. 5(c). The relevant facts are set forth in Section I, above. Thus, the Court addresses only the remaining five requirements below.

### 1. Nature of the Controversy

The parties disagree as to whether Nevada law recognizes an exception to the litigation privilege for legal malpractice actions. In fact, neither party includes any binding authority to support acceptance or rejection of such an exception in Nevada. In support of their respective arguments, the parties cite case law from many jurisdictions that have affirmatively accepted or rejected a legal malpractice exception to the litigation privilege. *Compare Creamer v. Danks*, 863 F.2d 1037, 1037 (1st Cir. 1988) (per curiam) (holding that the litigation privilege barred the plaintiffs' professional malpractice claim) *with Kolar v. Donahue, McIntosh & Hammerton*, 52 Cal.Rptr.3d 712, 719 (2006) (declining to extend the litigation privilege's protection to exempt litigators from malpractice liability).

///

### 2. Question of Law

Accordingly, the Court certifies the following question of law:

*Whether Nevada law recognizes an exception to the common law litigation privilege for legal malpractice and professional negligence actions.*

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 30) is **DENIED without prejudice**, with permission to renew the issue regarding the litigation privilege within thirty (30) days of the resolution of the Court's Certified Question to the Nevada Supreme Court.

**IT IS FURTHER ORDERED** that the following question of law is **CERTIFIED to the Nevada Supreme Court** pursuant to Rule 5 of the Nevada Rules of Appellate Procedure:

*Whether Nevada law recognizes an exception to the common law litigation privilege for legal malpractice and professional negligence actions.*

*See* Nev. R. App. P. 5(c)(1). The nature of the controversy and a statement of facts are discussed above. *See* Nev. R. App. P. 5(c)(2)-(3). Because Defendants are the movants, Defendants are designated as the Appellants, and Plaintiffs are designated as the Respondents. *See* Nev. R. App. P. 5(c)(4). The names and addresses of counsel are as follows:

**Counsel for Plaintiff**

Daniel R. McNutt
Carbajal & McNutt, LLP
625 South Eighth Street
Las Vegas, NV 89101

**Counsel for Defendant**

Kirk B. Lenhard and Anthony J. DiRaimondo
Brownstein Hyatt Farber Schreck, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

      Michael P. McNamara and Dylan Ruga
      Steptoe & Johnson LLP
      2121 Avenue of the Stars
      Los Angeles, CA 90067

*See* Nev. R. App. P. 5(c)(5). Further elaboration upon the certified question is included in this Order.

      **IT IS FURTHER ORDERED** that the Clerk of the Court shall forward a copy of this Order to the Clerk of the Nevada Supreme Court under the official seal of the United States District Court for the District of Nevada. *See* Nev. R. App. P. 5(d).

      **DATED** this 26th day of September, 2012.

_____
Gloria M. Navarro
United States District Judge